UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

RICHARD ANTHONY                                                PETITIONER
Reg. #44849-074

V.                           NO. 2:19-CV-00072-JTR

DEWAYNE HENDRIX,
Warden, FCI-Forrest City                                       RESPONDENT

### MEMORANDUM OPINION[1]

### I. Background

Pending before the Court is a 28 U.S.C. § 2241 Petition for Habeas Corpus and Memorandum Brief filed by Petitioner, Richard Anthony ("Anthony"),[2] an inmate in the custody of the Federal Bureau of Prisons ("BOP") at the Federal Correctional Institution ("FCI") in Forrest City, Arkansas. *Docs. 1 & 2*. Respondent filed a Response, *Doc. No. 11*. Anthony filed a Reply Brief. *Doc. 18.* Thus, the issues are joined and ready for disposition.

Anthony challenges a prison disciplinary resulting in the loss of good time credit. Because it affects the duration of his sentence, this § 2241 habeas action is

---

[1] The parties consented to allow a United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment. *Doc. 12*.

[2] Anthony's projected release date, according to the BOP's website, is July 13, 2030.

1

his exclusive remedy to address the alleged constitutional violations associated with his loss of good time credit. *See Portley–El v. Brill*, 288 F.3d 1063, 1066-67 (8th Cir. 2002).

The Court will begin by reviewing the relevant facts, which are undisputed.

On January 16, 2018, while incarcerated at the BOP's facility in Oakdale, Louisiana, Anthony received an Incident Report advising him that he had been charged with engaging in a sexual act.[3] The Report stated that, on January 15, 2018, Officer Lemieux saw Anthony with his left hand in his pants, engaging in a sexual act, while he maintained visual contact with her as she sat in her office. Incident Report, *Doc. 11-1*, *pp. 5-6*.

On January 22, 2018, an initial hearing to address the disciplinary was adjourned after Anthony "demanded production of the video records from the housing unit at the time of the alleged act." *Doc. 2 at 3-4*. Anthony contended the video evidence would establish he was not the prisoner Officer Lemieux observed performing the sexual act. The hearing officer indicated the hearing would resume after the video evidence could be located and reviewed. *Id. at 4*.[4]

---

[3] By the time he filed the § 2241 Petition, Anthony had been moved to FCI-Forrest City. Thus, this Court has subject matter jurisdiction over this action. *See Rumsfeld v. Padilla*, 542 U.S. 426 (2004) (the proper respondent in a habeas action is the petitioner's "immediate custodian" at the time of filing).

[4] Respondent does not challenge or controvert any of the facts as set forth in Anthony's habeas papers.

2

On February 6, 2018, the hearing was reconvened before A. Thomas, a disciplinary hearing officer, ("DHO Thomas"). Anthony asked DHO Thomas whether she had reviewed the video evidence. She denied reviewing it herself but said it had been reviewed by "someone else," who reported to her that nothing on the video "either supported Officer Lemieux's charge" or Anthony's defense. *Id*. During the hearing, Anthony categorically denied the accusations against him. He waived the right to call any witnesses but made a statement in which he pointed out that he was right handed, not left-handed. *Doc. 2, p. 3-4*. Officer Lemieux did not testify.

On February 9, 2018, DHO Thomas issued her written report, a copy of which was provided to Anthony. The report makes *no mention* of the video recording. In finding Anthony guilty, DHO Thomas gave "greater weight" to Officer Lemieux's incident report than to Anthony's testimony that he was innocent. Anthony received the following punishment for the disciplinary violation: (1) forfeiture of 27 days of good-time credit; (2) 30 days in disciplinary segregation; and (3) temporary loss of phone and commissary privileges. *Doc. 2, pp. 13-14*.

Anthony pursued an administrative appeal, which was denied.[5]

---

[5] The record raises several unanswered questions about the video of the incident. For example, DHO Thomas's Hearing Report contains no reference to the earlier hearing that was adjourned so the video could be located and reviewed. *Doc. 2 at 13-14*. Additionally, in the administrative appeal, Regional Director Caraway wrote:

On June 24, 2019, Anthony initiated this federal habeas action in which he claims that DHO Thomas violated his constitutional right to due process by: (1) failing to properly review available video evidence of the incident before the reconvened February 6 disciplinary hearing; (2) improperly delegating review of the video to an unnamed third party; (3) failing to consider and record Anthony's entire statement in his own defense; and (4) finding him guilty based on inadequate evidence. As relief for these constitutional violations, Anthony requests that the Court order Respondent to expunge Officer Lemieux's incident report and to restore the 27 days of good time credit that he was forced to forfeit. *Docs. 1 & 2*.

For the reasons discussed below, the Court finds the way DHO Thomas dealt with the video evidence of the incident violated Anthony's constitutionally protected procedural due process rights. Because this constitutional violation entitles Anthony to a new disciplinary hearing, during which the video of the incident must be properly evaluated and considered, the Court is not required to reach and decide Anthony's other arguments challenging the adequacy of the evidence DHO Thomas relied on to find him guilty.

---

> You claim the incident report is false and a review of the recorded video surveillance will reveal you were not guilty of the charge. You did not request the review of the security camera system at any stage of the disciplinary process.

*Id. at 16*. According to Anthony's recitation of the facts, which Respondent does not controvert, the initial hearing was adjourned because Anthony demanded the production and review of the videotape of the incident. Thus, it is hard to understand how Regional Director Caraway could conclude that Anthony "did not request the review of the security camera system at any stage of the disciplinary process."

4

## II. Discussion

Anthony's potential loss of good time credit, if he was convicted of the disciplinary, created a "liberty interest" which entitled him to certain minimum procedural due process protections. *Wolff v. McDonnell*, 418 U.S. 539 (1974). These constitutional protections included:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent*, *Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67 (1974)). Finally, he was also entitled to have "some evidence in the record" that was sufficient to support his disciplinary conviction. *Hill*, 472 U.S. at 454 (quoting *Wolff*, 418 U.S. at 558).

Respondent does not dispute Anthony's statement in his habeas papers that, during the initial January 22 disciplinary hearing, he requested the hearing officer to locate and review the video of the incident because he believed it contained important exculpatory evidence which would prove he was *not* the prisoner Officer Lemieux observed committing a sexual act. Respondent also does not dispute that, when DHO Thomas reconvened the hearing on February 6, she told Anthony only that "someone else" had located and reviewed the video and, according to this unidentified "reviewer," the video contained no evidence that "*either supported*

*Officer Lemieux's charge" or "Anthony's defense*."[6]  Finally, Respondent does not dispute that, during the reconvened February 6 hearing, DHO Thomas:  (1) failed to explain her reasons for not allowing Anthony to review the video for himself;  (2) failed to explain why she did not review the video herself, so she could make her own findings of fact about what it did and did not show;  and (3) failed to provide Anthony with a meaningful explanation of what "someone else" specifically saw on the video.

If the video did not "support the charge," as "someone" reported to DHO Thomas, this could mean Anthony was *not* the individual Officer Lemieux saw performing the sex act.  If the video did not support Anthony's defense, as "someone" also reported to DHO Thomas, this could mean he was guilty.  Finally, this stunningly vague description of how "someone" characterized the video could mean it showed *nothing at all* about the incident.  In other words, the hearsay description of the video that DHO Thomas conveyed to Anthony was plain and simple "double talk."

Under *Wolff*, Anthony had a due process right to review the video himself or receive a meaningful explanation from the hearing officer about what the video specifically showed with regard to his guilt or innocence.  Because DHO Thomas

---

[6]Presumably, the person who reviewed the video is a BOP employee or contractor; however, from the record, there is no way to tell.

did none of those things, Anthony was left with *no idea* of what DHO Thomas meant by the obtuse statement that "someone else" had reviewed the video and told her it neither supported "the disciplinary charge Officer Lemieux filed against Anthony" nor Anthony's defense.

Respondent summarily contends DHO Thomas was not required to personally review the video but cites no law and makes no arguments in support of what actually happened: (1) DHO Thomas did not personally review the video; (2) she had "someone else" do it; and (3) she accepted and passed along to Anthony "someone else's" vague and nonsensical characterization of the video as showing nothing that either supported the disciplinary charge against Anthony or his defense. *Doc. 11 at 1*.

At a disciplinary hearing, a prisoner has a due process right to "present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. Courts "universally have treated prison video surveillance evidence as a form of documentary evidence potentially subject to disclosure and review under *Wolff*." *Lennear v. Wilson*, 937 F.3d 257, 268 (4th Cir. 2019) (citing cases); *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 173 (3d Cir. 2011) (considering an inmate's request for videotape to be a request for documentary evidence); *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 815 (10th Cir. 2007) ("[T]he Bureau's refusal to produce and

review a videotape ... violated his due process right to present documentary evidence in his own defense."); *compare Alexander v. Schleder*, 790 F.Supp.2d 1179, 1187 (E.D. Cal. 2011) (concluding the DHO reasonably relied on an identified officer's written report summarizing "the contents of the video evidence" and did not need to "personally review videotape evidence").

The Court's holding in *Hill* allows a disciplinary hearing officer to rely solely upon a report from another correctional officer as "some evidence" to find an inmate guilty of a disciplinary offense. *See Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008). This evidentiary standard creates a "severe credibility problem [for prisoners] when trying to disprove the [disciplinary] charges of a prison guard." *Lennear*, 987 F.3d at 269 (omitting internal quotations and citation). Accordingly, when relevant video evidence exists, it is "particularly valuable" to prisoners who are challenging a disciplinary. *Id.*

Respondent does not dispute that, under *Wolff*, Anthony had a right to request that the video of the incident be located and reviewed because he believed it contained evidence he was innocent of the disciplinary charge. Respondent also does not challenge Anthony's claim that he was at least entitled to a meaningful explanation of the content of the video, so he could understand how it impacted his defense of mistaken identity. *Wolff*, 418 U.S. at 566. Finally, Respondent does not challenge Anthony's assertion that, in the initial hearing, he made it clear he believed

the video contained exculpatory evidence. *See*, *e.g.*, *Wilhite v. Kallis*, No. 18-CV-1251-JES, 2019 WL 2176172, at *5 (C.D. Ill. May 20, 2019) ("Due process does not entitle a prisoner to a highly burdensome and time-consuming review of video evidence without any indication that exculpatory evidence will be found.).

Instead, without discussing the relevant case law, Respondent makes only a conclusory assertion that *Wolff*'s requirement of access to documentary evidence was satisfied by DHO Thomas's obtuse statement that "someone" told her the video neither supported the disciplinary charges (meaning Anthony was innocent) or Anthony's defense (meaning he was guilty). The way in which DHO Thomas handled Anthony's demand for the production and review of the videotape prevented him from having a fair opportunity to understand its content and how it might assist his defense during the disciplinary hearing, thereby violating his due process rights under *Wolff*. *See Burns v. PA Dept. of Corrections*, 642 F.3d at 174 ("An inmate's right to [access] documentary evidence is . . . undermined if prison officials can bar the inmate from [accessing or] presenting the evidence simply by denying that the evidence is relevant, If a disciplinary hearing is to have any substance, the hearing officer must determine relevance of evidence, not corrections officers or employees."); *Lennear*, 937 F.3d at 271 (*quoting Burns*, 642 F.3d at 174).

By relying on the hopelessly confusing description of the video provided by "someone," who saw things "both ways," DHO Thomas "turn[ed] the disciplinary

9

proceedings into little more than the administrative equivalent of a "'show trial'" *Burns*, 642 F.3d at 174. The "right" to present evidence "is no right at all if the officer overseeing a disciplinary hearing can simply decide not to view the evidence" because someone else advises him it is not relevant. *Id*.

Accordingly, I conclude that Anthony's due process rights were violated when DHO Thomas delegated the review of potentially exculpatory video evidence to "someone else" and then relied on that unidentified third party's vague and confusing assessment of the video to conclude it did not aid Anthony's defense that he was *not* the prisoner Officer Lemieux saw engaging in the sex act.

To remedy this due process violation, Respondent has two options: (1) Obtain the video of the incident from the Oakdale Correctional Facility, carefully review it, and then conduct a new disciplinary hearing on the charge Officer Lemieux filed against Anthony;[7] or (2) Expunge the disciplinary conviction and restore the 27 days of good time credit Anthony lost as part of the punishment he received at the conclusion of the February 6, 2018 disciplinary hearing in Oakdale.

---

[7] During this hearing, Anthony is entitled to know, at least generally, who reviewed the video and receive a meaningful explanation of the content of the video, which specifically focuses on whether it shows him or someone else performing the alleged sex act in the presence of Officer Lemieux.

10

### III. Conclusion

IT IS HEREBY ORDERED that Petitioner Richard Anthony's habeas Petition be GRANTED to the limited extent that, within sixty days of the filing of this Order, Respondent must either: (1) Provide Anthony with a new disciplinary hearing that complies with the due process requirements of *Wolff*, as explained in this Order; or (2) Expunge the disciplinary conviction and restore to Anthony the 27 days of good time credit that were ordered to be forfeited after the reconvened February 6, 2018 disciplinary hearing at the BOP's facility in Oakdale, Louisiana.

IT IS SO ORDERED this 23rd day of April, 2020.

_____
UNITED STATES MAGISTRATE JUDGE